# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**EDDIE WAYNE MCCOY, JR., #L2187**                                                    **PLAINTIFF**

v.                                                             CIVIL NO. 3:22-cv-00455-CWR-LGI

**WARDEN JACOB VIGILANTE,
CAPTAIN CAROLYN RAY,
UNIT MANAGER DERRICK SMITH,
SERGEANT MARSHALO NAYLOR,
CORRECTIONAL OFFICER JASMIN
YOUNG, and UNIT MANAGER SHARON
WILLIAMS**                                                                           **DEFENDANTS**

## REPORT AND RECOMMENDATION

This case is before the Court on Defendants' Motion [24] for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies. Having considered the parties' submissions and the applicable law, the undersigned recommends that the Motion [24] for Summary Judgment be granted and Plaintiff's claims against Defendants be dismissed without prejudice.

### I. BACKGROUND

*Pro se* Plaintiff Eddie Wayne McCoy, Jr. ("Plaintiff") is a post-conviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"), incarcerated at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. Plaintiff is proceeding *in forma pauperis*, subject to the Prison Litigation Reform Act ("PLRA"), and he brings this suit pursuant to 42 U.S.C. § 1983. *See* Compl. [1]; Order [9]. Plaintiff complains about the conditions of his previous

confinement at East Mississippi Correctional Facility ("EMCF") in Meridian, Mississippi. The named Defendants are Jacob Vigilante, Warden at EMCF; Carolyn Ray, Captain at EMCF; Derrick Smith, Unit Manager at EMCF; Marshalo Naylor, Sergeant at EMCF; Jasmin Young, Correctional Officer at EMCF; and Sharon Williams, Unit Manager at EMCF.

In an effort to develop Plaintiff's claims, the Court entered an Order directing Plaintiff to respond by detailing his claims in accordance with the Court's order. *See* Order [13]. Plaintiff's claims presented in his Complaint [1], Motion [3] to Amend, and Response [14] are summarized below. *See also* Order [12] (granting Plaintiff's Motion [3] to Amend).

Plaintiff claims that on May 30, 2022, he was stabbed by other inmates while housed at EMCF in a lock-down unit. Compl. [1] at 9. Plaintiff alleges that Defendant Young was working as the tower officer but was not in the tower at the time of his attack. *Id*. Plaintiff states that Defendant Naylor was the first officer on the scene and other inmates told Naylor that Plaintiff stabbed himself. *Id*. at 8. Plaintiff complains that Defendant Naylor looked at him and left, staying gone for 30 minutes to an hour before he returned with help. *Id*. Plaintiff states that Defendant Naylor took him to a local hospital where he received treatment for his injuries which included 13 stitches. *Id*. at 10.

Plaintiff alleges that he was not supposed to be on lock-down but Defendant Ray "worked with gang member[] inmates" and "did a false report" resulting in Plaintiff's placement in lock-down on April 26, 2022. *Id*. at 7. Plaintiff further alleges

that Defendant Smith denied his requests to be moved to a different cell and that Defendant Williams used "false information" to classify him in "C" custody level. *Id.* at 8-9.

In his Complaint, Plaintiff alleges that Warden Vigilante "placed false RVR's on [his] record after [the] incident" and is attempting to cover-up the assault by stating that Plaintiff cut himself. *Id.* at 6. In response to the Court's Order [13] directing Plaintiff to state if he received a Rule Violation Report (RVR) for the stabbing incident that occurred on May 30, 2022, Plaintiff answers "No." Resp. [14] at 1; *see also* Order [13].

Plaintiff further claims that Defendants Williams, Vigilante, and Naylor "falsified" reports and had him "moved to SMCI to cover up what they allowed to happen." Compl. [1] at 11. Lastly, Plaintiff alleges that each Defendant was deliberately indifferent to repeated prison violence and violated MDOC policy and procedure.

Plaintiff complains that he was moved out of EMCF before he could exhaust his administrative remedies. *Id.* at 6, 10, 14. As relief, Plaintiff seeks 3 million dollars for pain and suffering. *Id.* at 12.

On May 30, 2023, Defendants filed a Motion for Summary Judgment, arguing Plaintiff failed to properly exhaust his available administrative remedies prior to filing this lawsuit. Plaintiff did not file a response, and the time for doing so has expired.

## II. DISCUSSION

A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences are construed in the light most favorable to the non-moving party. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). The Court must also "refrain from making credibility determinations or weighing the evidence." *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (citation omitted).

Summary judgment is routinely utilized to decide if pre-filing exhaustion is completed by prisoners in conditions-of-confinement cases. *See, e.g.*, *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (finding "there is no genuine issue of material fact as to whether Wilson exhausted his administrative remedies, and summary judgment was appropriate"); *Dillon*, 596 F.3d at 272 ("[E]xhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."). If defendants meet their "initial summary judgment burden of showing that there [is] no genuine issue of material fact regarding exhaustion" and the prisoner-plaintiff "fail[s] to come forward with specific facts showing there [is] a genuine dispute as to exhaustion, the district court [is] required to dismiss his claims." *Jackson v. Hall*, 763 F. App'x 376, 376-77 (5th Cir. 2019) (affirming summary judgment dismissal for failure to exhaust administrative remedies, noting that district court did not err by ruling on prisoner's claims in the

context of summary judgment without allowing discovery or conducting an evidentiary hearing).

B.     The PLRA's Exhaustion Requirement

The PLRA provides that an inmate may not sue under federal law until exhausting available administrative remedies. 42 U.S.C. § 1997e(a). The exhaustion requirement (1) "give[s] an agency an opportunity to correct its own mistakes . . . before it is haled into federal court" and (2) it permits "claim resolution in proceedings before an agency because it is faster and more economical than litigation in federal court." *Johnson v. Ford*, 361 F. App'x 752, 755 (5th Cir. 2008) (internal quotation marks and citations omitted) (discussing purposes of § 1997e(a)). It is well-settled that a prisoner must complete the exhaustion of available administrative remedies prior to filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("Pre-filing exhaustion is mandatory").

Exhaustion under the PLRA is an affirmative defense, and the burden is on Defendants to demonstrate that Plaintiff failed to exhaust available administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). To meet their burden, Defendants "must establish" without doubt "all of the essential elements of the defense of exhaustion." *Wilson*, 776 F.3d at 299 (citation omitted).

The PLRA dictates proper exhaustion, meaning that "prisoners must complete the administrative review process in accordance with the applicable procedural rules– rules that are defined not by the PLRA, but by the prison grievance process itself." *Butts*, 877 F.3d at 582 (quoting *Jones*, 549 U.S. at 218); *see also Cantwell v.*

5

*Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (per curiam) ("Exhaustion is defined by the prison's grievance procedures, and courts neither may add to nor subtract from them."). A prisoner's grievance must be sufficiently specific to provide officials with "a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). Finally, the exhaustion requirement is satisfied only if the prisoner pursues the administrative remedy "to conclusion." *Wilson*, 776 F.3d at 301 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

C.  <u>MDOC's Administrative Remedy Program</u>

Initially, the Court notes that MDOC's Administrative Remedy Program is detailed in Chapter VIII of the Inmate Handbook. Defendants filed a copy of the relevant Inmate Handbook as an Attachment [28] to their Motion [24] for Summary Judgment.[1]

MDOC implemented the Administrative Remedy Program ("ARP") statewide under the authority of Miss. Code Ann. § 47-5-801, and the existing version of the program was approved in *Gates v. Barbour*, No. 4:71-cv-6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010). The program is available for use by "all inmates committed to the custody of MDOC" in "all" institutions and facilities. [28] at 17.

The ARP is a two-step process through which an inmate may present grievances relating to his incarceration. *See id; Jackson*, 763 F. App'x at 377. To

---

[1] Since the PLRA "requires that administrative remedies be exhausted before the filing of a § 1983 suit," *see Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir.1998), the rules governing MDOC's Administrative Remedy Program "at the time prior to the filing of [Plaintiff's] suit" apply. *Wilson,* 776 F.3d at 299.

6

utilize the ARP,

> [a]n inmate must file a grievance within 30 days of the complained of incident. The grievance is reviewed by the prison's legal-claims adjudicator and, if there is an adverse response at the first step, the inmate may appeal to step two. If the inmate disagrees with the step two response, he may sue.

*Wheater v. Shaw*, 719 F. App'x 367, 369-70 (5th Cir. 2018) (internal citations omitted). The legal-claims adjudicator may also reject the grievance, meaning the grievance is not forwarded to the appropriate official for a step one response but instead the grievance is returned to the inmate. [28] at 17 (listing five reasons for rejection). Written notice of acceptance into the program or rejection is provided to the inmate. *Id.* at 18. If the request is "rejected for technical reasons or matters of form," the inmate has five days from the date of the rejection to submit a corrected grievance. *Id.*

An MDOC inmate completes the exhaustion of his administrative remedies when he proceeds through both steps of the ARP process. *See Wilson*, 776 F.3d at 302 (discussing MDOC's ARP process). There is an exception for disciplinary appeals. An inmate completes the ARP process for an appeal of a disciplinary decision or Rule Violation Report ("RVR") when he receives his first step response. *See* [28] at 18 (setting forth separate process for RVR appeals within MDOC's administrative remedy program).

D.    Plaintiff's Filings with the Administrative Remedy Program

In support of their Motion for Summary Judgment, Defendants submit an Affidavit from Marco Ugalde, the ARP Coordinator at EMCF. *See* [27-1] at 1-2.

Ugalde states that Plaintiff filed three grievances through the ARP pertaining to his incarceration at EMCF. *Id*. at 1. Plaintiff attaches three different "Request for Administrative Remedy" forms to his Complaint, *see* [1-1], [1-2], [1-2], along with one "Inmate Request Form" [1-4]. Plaintiff's grievances are detailed below.

1. EMCF 22-322

The ARP records demonstrate that Plaintiff submitted a grievance identified as EMCF 22-322 on February 19, 2022, stating that he needs his blood pressure checked. [27-1] at 9. A First Step Response issued from an official at EMCF noting that Plaintiff's blood pressure was checked several times since the filing of the grievance and that he is no longer housed at EMCF. *Id*. at 10. The ARP records do not reflect any further filings concerning this grievance.

2. EMCF 19-437

The ARP records further indicate that Plaintiff appealed a prison disciplinary decision (Rule Violation Report #01873947) in 2019 that is identified as EMCF 19-437. *Id*. at 12-19. The First Step Response denying Plaintiff's appeal issued on April 16, 2019. *Id*. at 12. Plaintiff completed the ARP for this grievance at the first step level because it was an appeal of an RVR. *See id*. (noting Plaintiff "fulfilled the requirements" of the ARP for this grievance).

3. Grievance dated March 4, 2022

Plaintiff submitted a grievance dated March 4, 2022, complaining about perceived harassment by Unit Manager L. Crokett. *Id*. at 4-5. On August 5, 2022, Ugalde sent Plaintiff a letter stating that he is returning this grievance to Plaintiff

8

for failing to "specify any relief sought." *Id*. at 3. The ARP records do not reflect any further filings concerning this grievance.

4. Request forms attached to Plaintiff's Complaint

Plaintiff's earliest Request for Administrative Remedy form that is attached to his Complaint is dated May 31, 2022. [1-4]. On this form, Plaintiff complains about housing in lock-down and not being allowed to use the telephone. Plaintiff asserts that he is being denied phone usage so he cannot report that he was stabbed. *Id*. at 1. The "Relief Requested" section of this form is blank. *Id*.

Plaintiff's next Request for Administrative Remedy form is dated June 1, 2022. [1-1]. In this grievance, Plaintiff complains that on May 30, 2022, he was attacked and stabbed by other inmates, who told the guards that Plaintiff cut himself. *Id*. at 1. Plaintiff states that he is "scared for [his] life." *Id*. As relief, Plaintiff seeks assistance and for the camera footage to be viewed which Plaintiff claims will corroborate his account of the stabbing. *Id*.

Plaintiff's last Request for Administrative Remedy form is dated June 2, 2022. [1-3]. In this grievance, Plaintiff states that he needs to use a telephone to inform his family about the stabbing and to contact a lawyer. *Id*. at 1. Plaintiff repeats his belief that denying him use of the phone is an attempt to "cover-up" the assault. *Id*.

Plaintiff also includes an "Inmate Request Form" that is dated June 2, 2022. [1-4]. In this form, Plaintiff states that he was stabbed, has no clothes, and that Unit Manager Smith will not assist him with getting clothes and has stopped him from using the telephone. *Id*. at 1.

E.       Arguments of the Parties

Defendants maintain that Plaintiff failed to complete the ARP process for any grievance related to the claims in this lawsuit prior to filing this action. For these reasons, Defendants argue they are entitled to summary judgment for Plaintiff's failure to exhaust his administrative remedies. As stated above, Plaintiff did not file a response to the Motion for Summary Judgment, and the time for doing so has expired.

F.       Analysis

After review of Plaintiff's Complaint and ARP records, it is clear that Plaintiff did not complete MDOC's ARP process for the claims he presents in this civil action. The Defendants submit ARP records indicating that Plaintiff failed to complete the administrative remedy program for two of the three grievances related to his incarceration at EMCF (EMCF 22-322 and Grievance dated March 4, 2022). Even if completed, these two grievances (blood pressure check and perceived harassment by a Unit Manager) fail to address Plaintiff's claims related to the assault and stabbing that occurred on May 30, 2022. Likewise, Plaintiff's grievance involving a 2019 disciplinary appeal (EMCF 19-437) does not address the claims Plaintiff presents in this case. These three unrelated grievances fail to provide Defendants with adequate notice of the claims asserted in this lawsuit. *See Johnson*, 385 F.3d at 517 (explaining a prisoner's grievance must be sufficiently specific to provide officials with "a fair opportunity to address the problem that will later form the basis of the lawsuit").

The ARP records also fail to contain the three Administrative Remedy Request forms that Plaintiff attached to his Complaint, indicating that these grievances were not properly filed or accepted into the program. In any event, Plaintiff does not dispute that he has not completed the steps of the administrative remedy program for any grievances related to the stabbing incident. Instead, Plaintiff asserts that he did not receive a response to the three separate grievances attached to his Complaint and that he was moved out of EMCF before he could complete the exhaustion process. Neither of these reasons excuse Plaintiff's obligation to complete the administrative remedy program prior to filing this Complaint.

In order for the benefits of exhaustion to be realized, the prison grievance system must be given "a fair opportunity to consider the grievance" and the "prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Woodford*, 548 U.S. at 95. Plaintiff may not simply initiate the grievance process, but he must complete the process "in accordance with the applicable rules . . . as a precondition to bringing suit in federal court." *Id.* at 88. Plaintiff cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Id.* at 84. Plaintiff must pursue the administrative remedy "to conclusion." *Wilson*, 776 F.3d at 301 (citations omitted).

The Fifth Circuit takes a "strict approach" to the PLRA's exhaustion requirement. *Id.* at 299-300. In order for an MDOC inmate to complete the

11

exhaustion of his administrative remedies, he is required to proceed through both steps of the ARP process, "even if MDOC fail[s] to respond at either of the steps." *Id.* at 302 (affirming summary judgment for failure to exhaust, finding inmate only completed step one of MDOC's ARP process and then filed suit alleging grievances were not responded to in a timely fashion). As detailed in the Inmate Handbook, "expiration of response time limits without receipt of a written response shall entitle the inmate to move on to the next step in the process." [28] at 18. As explained by the Fifth Circuit,

> a prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process. Thus, it is only if the prison fails to respond at the last step of the grievance process that the prisoner becomes entitled to sue, because then there is no next step (save filing a lawsuit) to which the prisoner can advance.

*Wilson*, 776 F.3d at 301. Plaintiff readily admits, and the ARP records demonstrate, that he did not proceed through each step of MDOC's administrative remedy program. *See, e.g.*, Compl. [1] at 10 ("After filing my [g]rievance through the Administrati[ve] Remedy Program . . . the Warden had me moved before I could exhaust them.").

A limited exception to the exhaustion requirement exists if administrative remedies are not available. *See Ross v. Blake*, 578 U.S. 632, 642-44 (2016) (explaining only exception comes from the statute's use of the word "available" and setting forth three examples of when a prison grievance system is unavailable or not capable of use to obtain relief). As noted above, MDOC's Administrative Remedy Program is

available for use by "all inmates committed to the custody of MDOC" in "all" institutions and facilities. *See* [28] at 17.

Plaintiff's allegation that he was transferred out of EMCF before he could complete the administrative remedy process falls short of making the administrative remedy process unavailable or incapable of use within the meaning of the PLRA. *See Ross,* 578 U.S. at 642-44. A transfer between correctional facilities "renders the [ARP] process 'unavailable' only when an inmate is actually 'barred' from utilizing the process." *Leon v. Martin*, No. 3:17-cv-273-DCB-LRA, 2018 WL 4568757, *5 (S.D. Miss. 2018) (quoting *Nottingham v. Richardson*, 499 F. App'x 368, 374 (5th Cir. 2012)); *see Lindsey v. Striedel*, 486 F. App'x 449, 452 (5th Cir. 2012) (stating transfer to different prison does not excuse failure to exhaust).

Plaintiff does not present any evidence that he tried to file any grievances or appeals at SMCI related to the stabbing incident or for any other claims. Plaintiff does not claim that he was barred from utilizing the ARP program at EMCF or SMCI or provide any evidence to support such a claim. Additionally, the ARP records demonstrate that a first step response issued to one of Plaintiff's unrelated, but filed grievances (blood pressure check), from an EMCF official after Plaintiff was moved to SMCI. [27-1] at 10. Plaintiff's transfer to a different prison facility does not render MDOC's statewide ARP process unavailable.

In summary, the record reveals that Plaintiff's three grievances related to the stabbing incident (attached to his Complaint), did not reach the administrative remedy program. Even if the undersigned *assumes* that Plaintiff did properly submit

the grievances attached to his Complaint, he failed to proceed to step two when he did not receive a timely step one response.[2] Likewise, Plaintiff's other grievances that do appear in the ARP records were not pursued to conclusion or fail to address the allegations presented in Plaintiff's Complaint. Plaintiff's transfer to a different prison facility does not render MDOC's statewide ARP process unavailable. Thus, Plaintiff did not complete the ARP process for the claims he asserts in this case, thereby failing to properly exhaust his available administrative remedies prior to filing his Complaint.

In conclusion, "[p]re-filing exhaustion is mandatory, and [this] case must be dismissed if available administrative remedies [are] not exhausted." *Gonzalez*, 702 F.3d at 788. Because Plaintiff failed to exhaust his available administrative remedies prior to filing this case, dismissal is required.

### III. RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that:

1. Defendants' Motion [24] for Summary Judgment be GRANTED;

2. This action be dismissed WITHOUT PREJUDICE; and

3. A final judgment be entered as the adoption of this Report and Recommendation that will dispose of all the claims against all Defendants.

### IV. NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party may serve and file

---

[2] Since Plaintiff's grievances were not pursued to conclusion, the undersigned finds it unnecessary to determine if the grievances provide adequate notice to the Defendants of the claims presented in this civil action.

written objections to the recommendations, with a copy to the United States District Judge, the Magistrate Judge, and the opposing party, within fourteen days after being served a copy of this recommendation. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained within this report and recommendation will bar that party from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court, except on the grounds of plain error. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Alexander v. Verizon Wireless Services*, L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

This the 25th day of August, 2023.

s/ *LaKeysha Greer Isaac*
UNITED STATES MAGISTRATE JUDGE