IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

EDDIE WAYNE MCCOY, JR.,

                *Plaintiff*,

*v.*

WARDEN JACOB VIGILANTE, *et al.*,

                *Defendants*.

CAUSE NO. 3:22-CV-455-CWR-LGI

## ORDER

On May 30, 2022, three incarcerated persons pried open Eddie Wayne McCoy, Jr.'s cell door in the East Mississippi Correctional Facility. One stood watch while the other two stabbed him repeatedly in the head and arm. There were no officers on the unit floor or in the tower to stop them. McCoy was taken to a local hospital. He received 13 stitches.

The next day, McCoy filed a written request for an administrative remedy. "The warden and officers are working together to keep me off the phone. So I can't report I've been stab. . . . I need help." McCoy received no response or acknowledgement from prison officials.

On June 1, he filed another request for an administrative remedy. This new document explained the stabbing in more detail. "Please assist me with this matter," McCoy asked. "I don't trust the staff here cause they are working with inmates covering up there tracks." If someone would only view the camera footage, he pleaded, "you will see I'm not lying and I'm scared for my life." But McCoy received nothing back on this request.

On June 2, McCoy filed his third request for an administrative remedy. "Help," he began. "I need to use the phone to contact a lawyer and my family. My family still does not know I've been assaulted and stab." Prison officials did not respond to McCoy's plea.

Later that same day, June 2, McCoy filed an "Inmate Request Form." He stated, "I have been stab in head and arm. I have no clothes and I've done ARP form begged Unit Manager Smith. He is working with inmates. He want assist me in getting clothes. Stopping me from use wall phone. No help." McCoy checked boxes to mark this a "grievance" and direct it to a "case manager." Nothing happened then, either.

On June 9, McCoy presented all four of these completed requests to a notary public, who stamped, signed, and dated them.

Hearing nothing back, McCoy filed a verified complaint in this Court on August 4, 2022. He alleged that the defendants, who are employees of the private prison operator Management and Training Corporation, were deliberately indifferent to the attack and covered up his assault.[1] He described his various grievances and attached them as exhibits to the complaint. McCoy then noted that he "was shipped off" to another facility (South Mississippi Correctional Institution[2]) before receiving any response to his grievances, in violation of the Mississippi Department of Corrections' (MDOC) grievance procedure. His verified complaint sought compensatory damages.

Before any discovery[3] occurred, the defendants moved for summary judgment. They argued that McCoy's suit could not proceed because he failed to exhaust his administrative

[1] The pleadings clarified that the defendants are Warden Jacob Vigilante, Captain Carolyn Ray, Sergeant Marshalo Naylor, Unit Manager Sharon Williams, Unit Manager Derrick Smith, and Correctional Officer Jasmin Young.
[2] SMCI is a state-operated prison. It is not run by employees of Management & Training Corporation.
[3] McCoy repeatedly sought discovery of his "master file." Docket Nos. 4 & 11. Every request was denied.

remedies. "Management and Training Corporation has no record of receiving those four grievances," it claimed. But even if it had received them, "Plaintiff has failed to exhaust his administrative remedies." McCoy did not respond to the motion.

The Magistrate Judge agreed with the prison officials. In a Report and Recommendation (R&R), she found that MTC's absence of evidence was itself evidence "that these grievances were not properly filed or accepted into the program." And even if he *had* submitted them, the court found, McCoy had not seen the administrative process through to its conclusion. A transfer from one prison to another was not enough to show that the administrative remedy process was "unavailable," she wrote, and "Plaintiff does not present any evidence that he tried to file any grievances or appeals at SMCI related to the stabbing incident or for any other claims." The court therefore recommended granting the defendants' motion for summary judgment.

McCoy timely objected. This time, the defendants did not respond.

The legal standard is well-established. "When a party objects to a Report and Recommendation this Court is required to 'make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Irby v. King*, No. 2:09-CV-204-KS-MTP, 2010 WL 2944673, at *1 (S.D. Miss. July 22, 2010) (quoting 28 U.S.C. § 636(b)(1)). "Such review means that this Court will examine the entire record and will make an independent assessment of the law." *Id.*

Upon *de novo* review, the Court respectfully disagrees with the R&R.

At the summary-judgment stage, courts must "view the facts in the light most favorable to the non-movant and draw all inferences in his favor." *Caceres v. Preload, L.L.C.*, No. 23-30354, 2023 WL 7986594, at *1 (5th Cir. Nov. 17, 2023). Here, there is a sharp conflict

3

in the evidence as to whether McCoy filed any of his four stabbing-related grievances. Under the summary-judgment standard, therefore, we must conclude that McCoy did submit those four documents to prison officials.

The next question is whether McCoy proceeded through the second and final step of MDOC's administrative remedy program, or "ARP." The defendants have submitted Mississippi's "Inmate Handbook," as revised in June 2016, to support their argument that McCoy did not complete this step. Docket No. 28.

MDOC's ARP is described on pages 16 and 17 of the Inmate Handbook.[4] It promises "reasonable responses and, where appropriate[,] meaningful remedies" to incarcerated persons' grievances "relating to any aspect of their incarceration." It says that incarcerated people "may request information or assistance in using the program from their Case Manager or from any staff member in their housing unit." And it states that "[n]otice of the request's acceptance or rejection will be given by Form ARP-1."

The available evidence indicates that MTC officials breached this policy. McCoy's four grievances reveal that case managers and staff members did not, in fact, assist him in using the program. Prison officials also did not send him a completed Form ARP-1 telling him whether his grievances had been accepted for review or rejected. It was reasonable to conclude that they were ignoring his grievances and had, by their inaction, rendered the ARP unavailable. On this record, in fact, no other inference is possible.[5]

---

[4] The defendants' supporting memorandum claimed that they had attached MDOC's ARP policy as Exhibit D. Docket No. 25 at 4. The record contains no such Exhibit. There are only two exhibits: Exhibits A and B. Other portions of the defendants' memorandum, meanwhile, reproduce paragraphs of identical text. *Compare id.* at 6 *with id.* at 8. It is as if the memorandum was copied and pasted from other documents, and then never checked.

[5] "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact. Similarly, while it is a question of law whether administrative remedies qualify as being 'available' under 42 U.S.C.

The defendants might say that this doesn't matter. They might even be correct. Under current law, it is not clear that there are any consequences for prison officials who violate MDOC's administrative remedy program. Consequences for non-compliance fall entirely on one side: the incarcerated people. It is a familiar double standard. The powerless are held to the "Rules." The powerful need not abide. Sometimes Rules don't even bind them.

Let us pause for a moment on this point. The Report and Recommendation emphasized precedent holding that prison officials must be "given a fair opportunity to consider the grievance" because, among other benefits of this system, "witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved." *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). This cannot happen "unless the grievant complies with the system's critical procedural rules." *Id.* And incarcerated people won't comply "unless noncompliance carries a sanction." *Id.* In other words, we punish incarcerated people if they fail to complete the ARP steps. But, at least in Mississippi, there is no consequence for officials who fail to complete their own obligations under the ARP.

In any event, despite their own non-compliance, the defendants press that they are entitled to summary judgment because McCoy could have, but failed to, move onto step two of the administrative remedy process *after* his transfer to a different prison. The argument, though, has legal and factual problems. The Court begins with the legal problems.

The defendants' memorandum quotes this line, purportedly from *Blank v. Tabera*: "[t]he simple fact that plaintiff was transferred [from one federal correctional institution] to another facility cannot excuse his failure to pursue and exhaust available administrative

---

§ 1997e(a), availability may sometimes turn on questions of fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citations omitted).

remedies." Docket No. 25 at 7 (citing 544 F. App'x 480 (5th Cir. 2013)). *Blank* is a four-paragraph decision. It contains no such quote. The origin of these words is unclear. The Court therefore continues down the chain of cases, looking for bedrock principles of law.

*Blank* cites *Lindsey v. Striedel*, 486 F. App'x 449, 452 (5th Cir. 2012) for the parenthetical proposition that "transfer to separate prison facility does not excuse failure to exhaust." *Lindsey*, in turn, draws support for this idea from *Dillon v. Rogers*, 596 F.3d 260, 267-68 (5th Cir. 2010). But an examination of *Dillon* reveals that it provides scant support for the defendants' summary-judgment motion.

Keith Mark Dillon was a detainee in Louisiana. He did not complete the second step of Louisiana's ARP because he was transferred to a different facility. 596 F.3d at 265. The district court saw this as sufficient grounds to grant summary judgment for the defendants on failure-to-exhaust grounds. Yet the Fifth Circuit reversed.

"Since exhaustion is an affirmative defense," the appellate court started, the prison officials "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Id.* at 266. The court found that prison officials had not yet done so. It noted that "no discovery" had been conducted and the record was "fragmentary." *Id.* at 268-69. The court then explained that "in some cases, unique circumstances may arise that necessitate allowing some discovery prior to ruling, *such as where the availability of administrative remedies is contested*." *Id.* at 273 n.4 (emphasis added). Because there were factual issues about the availability of administrative remedies post-transfer, Dillon was entitled to discovery.

A closer examination of Louisiana's ARP reveals *Dillon* to be even more problematic for the defendants in today's case. Louisiana's Administrative Code expressly provided that

6

when an incarcerated person "files a request after transfer on an action taken by the sending institution, the sending institution will complete the processing through the first step." *Id.* at 268 (citation omitted). The defendants have pointed to no such provision in MDOC's Inmate Handbook that would put McCoy on notice of that opportunity for exhaustion. Louisiana's ARP, meanwhile, gave prison officials 40 days to respond to a first-step grievance. *Id.* at 265-66. No such deadline is present in Mississippi's evidence. McCoy could not have known how long to wait before moving onto step two.

In sum, *Dillon* reveals that summary judgment in today's case would be procedurally and factually inappropriate. A person claiming that administrative remedies were unavailable is entitled to discovery. That's true even when the facility's policy notifies persons of the relevant deadlines and the opportunity to exhaust when transferred to another institution. So far, though, McCoy has not had any opportunity to take discovery, despite being subjected to a much more opaque ARP. That's not enough. He must be allowed to obtain discovery on the matters set forth in his ARPs.

For these reasons, the objection is sustained, the Report and Recommendation is not adopted, and the motion for summary judgment is denied without prejudice.

**SO ORDERED**, this the 1st day of February, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE